No. 29,465.

THE STATE OF KANSAS, *Appellee*, v. ROY CALDWELL, *Appellant.*

(293 Pac. 389.)

Opinion filed December 1, 1930.

*J. W. Ward, Charles B. Hudson,* both of Wichita, and *Clark A. Wallace,* of Kingman, for the appellant.

*William A. Smith,* attorney-general, *R. O. Mason,* assistant attorney-general, and *Paul R. Wunsch,* county attorney, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: The defendant was convicted of violation of R. S. 21-549 on a charge of receiving stolen property, knowing the same to have been stolen, and from that conviction he appeals to this court.

He was convicted largely upon the testimony of a witness named Kerfuss, who was an escaped convict from the state penitentiary. Kerfuss' testimony was corroborated in some particulars by that of the divorced wife of the defendant. The witness Kerfuss had been sentenced to the penitentiary during the year 1925. He was permitted to testify substantially as follows:

That he became acquainted with the defendant in 1921; that before he was sentenced to the penitentiary in 1925 he had had numerous conversations with the defendant relative to the business

in which he (the witness) was then engaged, namely, that of stealing automobiles; that these conversations had with the defendant relative to stealing automobiles extended over a period from 1921 until he was convicted in 1925; that during that time the defendant helped him dispose of some of the stolen property; that after being sent to the penitentiary he spent about a year and a half there and then escaped; that immediately upon his escape he went to the home of the defendant, who at that time had moved from Wichita to a farm near Murdock, in Kingman county, and that he remained with the defendant about two weeks; that he helped defendant put out some wheat; that he told defendant about having escaped from the penitentiary and that defendant said he had read about it in the papers. The witness Kerfuss further testified that the defendant suggested Kerfuss could rob the Phil Stoehr Hardware Company at Murdock; that defendant told him of different ones living about there who had harness that could be stolen very easily; that defendant told him of parties who had other personal property and told him where they lived; that after defendant mentioned the hardware store to him he (Kerfuss) was at the defendant's home probably thirty times, the last time being about six months prior to the trial; that later the witness Kerfuss robbed one Swartz and also a man named Cook, and the Phil Stoehr Hardware Company; that he robbed the hardware store twice; that he stole a harness from Swartz and a saddle from Cook; that the defendant told him he needed a set of harness and would like to have a good set; that the witness then went and stole a set of harness and gave it to the defendant about a year before the trial; that he took the harness to Oklahoma, but later brought it back to defendant; that at the time he gave this harness to the defendant he told him where he had gotten it and further told defendant that they were "hot"—to take care of them; that later he came back to defendant's place and the harness was gone; that he asked defendant what he had done with it and defendant said it was hanging in the house; that later he saw the harness in a closet in the house; that defendant had taken off some parts of the harness and changed it in some respects.

As to the foregoing the appellant complains that it was error to permit the witness to testify to the commission of other crimes not directly connected with the one with which the defendant is charged.

The witness Kerfuss was permitted to testify, also, that he and another man at one time brought to defendant's place four pigs

weighing about 40 pounds each; a gas stove, about 36 gallons of liquor and a quarter of beef; that the witness could not say this was stolen property; that the property was brought in by himself and a man named Carlin, who traveled with Kerfuss; that Carlin handled some liquor; that the property they brought to defendant's home was Carlin's property and he did not know of his own knowledge whether it was stolen or not.

As to admission of this latter testimony the appellant makes the complaint that a timely objection made to its introduction was by the court "overruled at this time" and that later, at the close of the evidence, a motion was made to strike out the testimony last above noted, but this was overruled by the court; that by reason of the admission of this testimony and especially the fact that the county attorney later argued it at some length the appellant was materially prejudiced.

We will first take up the point made by appellant that it was error to permit the witness Kerfuss to testify to the commission of other crimes and to his having told the defendant about them or having discussed them with the defendant. A material issue in the offense charged is knowledge. Evidently the court permitted Kerfuss to testify as to his previous relations with the defendant, the conversations had with him and his career of crime, on the theory that it was competent to go to the jury on the question of whether or not defendant at the time he received the harness from Kerfuss knew that it was stolen property. We think it had probative value on the question of the mental attitude or knowledge of the defendant at the time he received the harness. (*State v. Minnick,* 113 Kan. 385, 214 Pac. 111; *State v. Emory,* 116 Kan. 381, 226 Pac. 754; *State v. Stanley,* 123 Kan. 113, 254 Pac. 314.)

Relative to the contention made as to the admission of the testimony concerning other property brought to defendant's place by the witness Kerfuss and one Carlin, the fact that the record does not clearly disclose any proof that this was stolen property presents some difficulty upon the question of its admissibility.

The appellant criticizes instruction No. 8 given by the court, which reads as follows:

"Evidence has been introduced in the trial of this case with reference to the defendant having received other personal property *purporting to have been stolen.* And in this connection I say to you that this evidence is only to be considered by you if you believe that the property *was stolen* and

was received by the defendant, Roy Caldwell, *knowing the same to have been stolen,* and even then only for the purpose of ascertaining the *mental attitude, knowledge or intention* of the said Roy Caldwell with reference to receiving the property alleged to have been stolen in the seventh count of the information." (Italics ours.) ·

Appellant criticizes the language used above—"purporting to have been stolen"—on the ground that there was no actual proof that it was stolen.

We have carefully considered this criticism in connection with the fact that the record does not contain affirmative proof that the pigs, stove, meat and liquor were stolen. However, it is to be noted that in the same instruction the court qualifies the weight to be given to the evidence by telling the jury that it is only to be considered "if you believe that the property was stolen and was received by the defendant, Roy Caldwell, knowing the same to have been stolen." Considering the instruction as a whole, we do not deem it erroneous, nor in view of the instruction given do we consider that the admission of the testimony complained of constituted prejudicial or reversible error.

The appellant makes strenuous complaint relative to the argument of the county attorney and contends that the county attorney went entirely outside the record in several instances.

Among other things the county attorney argued at some length upon the evidence as to the pigs and the stove which were brought to the defendant's place, and discussed the fact that the stove was new and in a crate and had to be uncrated, arguing that this tended to show it had been taken from some hardware store, and that it was hardly reasonable that two men like Kerfuss and Carlin would go out and buy four pigs, take them to the defendant and make him a present of them.

The court gave the instruction above noted, and while there was no proof that the property was actually stolen, yet the county attorney's argument amounted only to an analysis of the situation developed by this testimony in order to demonstrate to the jury the probability of its being stolen property.

The appellant claims the county attorney again went outside the record in making the following argument:

"Mr. Ward (one of the attorneys for defendant) tried to insinuate in this case—by saying, Why did Mr. Fisher (the sheriff) ask Mrs. Caldwell to go down and see Mr. Kerfuss in jail? He says she didn't go ahead and explain

it. Now, gentlemen of the jury, they had the same opportunity to have asked Mrs. Caldwell why the sheriff asked her to go down, and they could have called on Mr. Fisher and asked him that identical question, but since they like to know the reason why, I will tell you why. . . . Kerfuss had told us certain things that pointed to Caldwell. We knew that his wife, Caldwell's wife, knew about those things, and we knew that if we sent her down there and tried to find out what Kerfuss said he would likely tell her the truth and we could put her on the witness stand and she could tell what she got out of Kerfuss and have what Kerfuss told us, too, and we could tell whether they were alike or not, but, gentlemen of the jury, those stories dovetailed together. . . ."

This was objected to as being outside the record and overruled by the court. It is true that this argument is in some respects outside the record, and one of the things which this court has frequently urged upon attorneys is that they stay within the record in their arguments to the jury. The county attorney in justification takes the position that it was brought out by the argument made by counsel for defendant and that it was necessary as an answer to that argument.

It further appears from the record that the witness Mrs. Caldwell testified that she was requested by the sheriff to have a talk with Charlie Kerfuss in jail. Upon objection being made, the county attorney discontinued the line of argument he was then pursuing.

The county attorney further stated in his argument:

"Now, gentlemen of the jury, there has been much said with reference to the testimony gotten from Mr. Kerfuss by the officers. And Mr. Kerfuss has told you in this case what he told us. And he has told things that these attorneys don't know and things they do know and things that they want you men to think they do know. And, gentlemen of the jury, I don't know but what one of the men representing the defendant here was the man, was Mr. Kerfuss' attorney in Wichita when he had his difficulty over there. But here, gentlemen of the jury, is the reason for the testimony. I will show you why it is proper and why it is equitable—Mr. Kerfuss is now or should be serving his second time in the penitentiary. He has three or four years to serve up there and when he goes back and completes his term they can try him on the charge of an escape, under which charge they would sentence that man to life in the penitentiary at hard labor at Lansing."

The above was objected to as being outside the record and absolutely untrue. The objection was overruled and the court commented: "I think it is permissible under the argument made by defendant's counsel."

The various statements made by the county attorney are close to the border line. Attorneys in arguments to a jury should at all

times stay within the record. This is true whether the action be civil or criminal. Attorneys should conduct proceedings in accordance with the rules. When they step outside bounds they do so at their peril. We have given earnest consideration to appellant's claim of error because of the conduct of the county attorney, but upon a consideration of the whole record we cannot see that appellant's rights were clearly prejudiced by these arguments.

In view of R. S. 62-1718 and the numerous decisions of this court under that statute to the effect that a judgment of conviction will not be reversed unless it is clear that the errors affect the substantial rights of the accused, we feel that the grounds for reversal are insufficient.

We have examined the other specifications of error urged by the appellant and it does not clearly appear from the record that the things complained of by the appellant were necessarily prejudicial to him.

The judgment is affirmed.